IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FRANK JOSEPH SCHWINDLER, | :: | PRISONER CIVIL RIGHTS |
|     Plaintiff, | :: | 42 U.S.C. § 1983 |
| | :: | |
| v. | :: | |
| | :: | |
| BRIAN OWENS, Commissioner, | :: | CIVIL ACTION NO. |
| Georgia Department of Corrections, | :: | 1:11-CV-1276-TCB-LTW |
|     Defendant. | :: | |

## **O R D E R**

Plaintiff Frank Joseph Schwindler, pro se, is a state prisoner who has been confined in Georgia prisons for over ten years. He filed this suit in April 2011 claiming violations of his constitutional rights to access the courts, free speech, and freedom of religion. His claims stem largely from the Georgia Department of Corrections' ("GDC") numerous transfers of him among prisons. Schwindler alleges, among other things, that the GDC (1) denied him use of his personal legal files that he needs to pursue state habeas proceedings pending in Georgia state courts, and (2) ultimately lost some of those files in the prison transfers. The Court screened Schwindler's complaint and amended complaint and allowed his access-to-courts, retaliation, and religious freedom claims to proceed. Defendant Brian Owens, the Commissioner of the GDC, then filed a motion to dismiss all of Schwindler's claims.

Magistrate Judge Walker issued a Report and Recommendation that thoroughly examines Schwindler's claims and the parties' arguments on the motion to dismiss. (Doc. 31 ("R&R").) Judge Walker recommends that Owens's motion be denied as to Schwindler's access-to-courts and retaliation claims regarding events that occurred on or after April 12, 2009 (two years before Schwindler filed his complaint in this action). (R&R at 27.) Owens objects to that recommendation. (Doc. 33.) Judge Walker recommends that Schwindler's remaining claims be dismissed, some without prejudice for Schwindler's failure to exhaust his administrative remedies. (R&R at 27.) Schwindler objects to that recommendation. (Doc. 39.) Judge Walker also recommends that Schwindler's motion for entry of default be denied and that his motion for discovery period be granted.[1] (R&R at 27-28.)

A district judge much conduct a careful and complete review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982). The district judge must "make a de novo determination of those portions of the [R&R] to

---

[1] Schwindler has not objected to the recommendation that his motion for entry of default be denied, and Owens has not objected to the recommendation that Schwindler's motion for a four-month discovery period be granted. The Court finds no clear error in those recommendations. After the R&R issued, Schwindler filed motions for preliminary injunctive relief. (Docs. 35, 43.) The Court held a telephone hearing on those motions on February 24, 2012 and is holding the motions in abeyance while the parties undertake steps to informally resolve the issues. (Doc. 44.)

2

which objection is made," 28 U.S.C. § 636(b)(1)(C), while those portions of the R&R for which there is no objection are reviewed only for clear error, *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

Because the parties, between them, have objected to all of Judge Walker's recommendations regarding the motion to dismiss, the Court has reviewed all the pleadings and briefs de novo. Except for some of Schwindler's religious freedom claims against Owens in his official capacity, as discussed in Part II below, the Court finds no merit in either party's objections.

**I.      Owens's Objections to the R&R**

The R&R correctly finds that Schwindler's allegations must be liberally construed and that his access-to-courts and retaliation claims for post-April 12, 2009 events should proceed. Reasonable inferences from Schwindler's allegations, viewed in context and not parsed in the strained fashion Owens urges, support a finding that a GDC custom or policy was the impetus for the events underlying the access-to-courts and retaliation claims. With the exception of claims for damages against Owens in his individual capacity that are based on an alleged policy, Schwindler's claims do not require a finding that Owens personally implemented a policy, personally established an informal custom, or was personally involved in every event upon which

3

Schwindler's access-to-courts and retaliation claims are based. (R&R at 14 & n.4 (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 706 (11th Cir. 1985) and other authority).)

The Court disagrees with Owens that Schwindler's allegations regarding his inability to use his legal files for several years "clearly [present] two distinct claims." (*See* Doc. 33 at 6.) Schwindler fairly alleges that some of his legal files would not have been lost or destroyed in April 2009 had it not been for a custom, policy, or indifference to subordinates's actions that was in place and perpetuated throughout the Georgia prison system for years prior to that date. While it may be plausible that the alleged actions in April 2009 were the sole result of a rogue prison warden's actions unconnected to any policy, custom, or direction emanating from the GDC, as Owens suggests, it is equally plausible that those alleged actions were part and parcel of an unconstitutional policy, custom, or disregard for unconstitutional acts for which Owens may be held liable. *See Owens v. Corr. Med. Servs., Inc.*, No. 1:07-cv-934, 2009 WL 2242686, at *2-4 & nn.7, 9 (W.D. Mich. July 23, 2009) (holding that although prisoner ultimately might not prevail on § 1983 claim, he had "sufficiently alleged a pattern or repeated evidence" of misconduct to support municipal liability); *McCormick v. City of Lawrence*, 271 F. Supp. 2d 1292, 1299-1300, 1307-08 (D. Kan. 2003) (holding that

4

allegations that multiple police officers had "repeatedly taken retaliatory actions" against plaintiffs over one-year period were sufficient to support municipal liability). The reasonable inferences from Schwindler's allegations must be considered in ruling on Owens' motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Schwindler's allegations also support a plausible finding that the motivating force behind the alleged custom or policy is to retaliate against him for filing his state habeas action and impede his ability to prosecute that action. Schwindler alleges that the various acts—numerous prison transfers at critical points in the state habeas proceedings and to different judicial venues, sequester and loss of legal files that were needed for the court proceedings at various prisons, and denial of medical treatment—were all part of a concerted effort to prevent him from pursuing habeas relief. The evidence may ultimately show that numerous prison officials took those actions independently without any connecting thread despite the alleged acts's similarity and continuity over a long period of time. At this stage of the case, however, Schwindler has stated plausible access-to-courts and retaliation claims against Owens.

5

## II. Schwindler's Objections to the R&R

Schwindler objects to dismissal of his tort claims under state law, but does not dispute the Georgia law providing immunity to state officials from tort liability. Schwindler also acknowledges that such claims must be pursued against the State, itself, in state court. Schwindler complains of his inability to adequately litigate his claims in the numerous state actions he already has filed because of the issues surrounding his prison transfers and the alleged loss of his legal files at the hands of the GDC. Schwindler seeks "some sort of equitable action by this Court," including possibly "to transfer the state tort claim to Hancock County Superior Court for consolidation with the pending § 1983 / habeas corpus case . . . with direction to separate that action back into its component parts, and transferring both [separated actions] to the Baldwin County Superior court." (Doc. 39 at 6.) While the Court sympathizes with Schwindler's alleged predicament in the state courts, this Court cannot transfer claims asserted in this Court to a state court or interfere in cases pending in state courts. *See Younger v. Harris*, 401 U.S. 37, 43 (1971). The R&R correctly found that Owens is immune from tort claims brought under Georgia law, and this Court must apply that controlling law.

6

Schwindler also objects to the R&R's findings that the continuing violation doctrine does not apply to his time-barred claims. He argues that Georgia's version of the doctrine should apply in this case because the alleged actions all occurred in Georgia. The Court cannot apply Georgia law on this issue.

The continuing violation doctrine concerns the date on which a cause of action accrues. *Smith v. Shorstein*, 217 F. App'x 877, 881 (11th Cir. 2007) ("When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases."). "Federal law determines when a federal civil rights claim accrues." *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996); *see Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983) ("Although state law governs the substantive limitation period, federal law determines when a civil rights action accrues and, therefore, when the statute of limitations begins to run."). Thus, federal, not state, law governs whether the continuing violation doctrine applies. *See id.*; *Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003) ("[T]he doctrine of continuing violation is one governing accrual, not tolling, and is therefore governed by federal law."). Because it is clear from Schwindler's allegations in his amended complaint that some of his claims

7

accrued more than two years before he filed this suit and a reasonable person would have known of the claims at that time, the continuing violation doctrine does not apply.

As for Schwindler's religious freedom claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the R&R concluded that some of those claims were time-barred and that the other claims failed because Schwindler failed to exhaust his administrative remedies. Judge Walker reviewed the evidence submitted by both parties on the exhaustion issue and made factual determinations on the issue. In his objections to the R&R, Schwindler presented additional evidence: a grievance he filed regarding the alleged denial of his religious items at Wilcox State Prison in 2011. (Doc. 39 at 12-15.) Schwindler referenced that grievance in his response to Owens's motion to dismiss, but did not submit a copy of it for Judge Walker's consideration on the exhaustion issue. The Court may nonetheless consider the evidence in reviewing Schwindler's objections. *See* 28 U.S.C. § 636(b)(1) (in considering objections to a report and recommendation, a district judge "may also receive further evidence").

The Court finds that Schwindler exhausted his administrative remedies regarding the alleged violation of his religious freedom rights while he was confined at Wilcox State Prison. Schwindler has submitted a copy of the informal grievance,

8

AO 72A
(Rev.8/82)

formal grievance, and appeal response from Owens's office regarding his religious freedom claims at Wilcox State Prison. The evidence demonstrates that Schwindler exhausted all three steps of the GDC's grievance process for those claims. The claims are not time-barred because Schwindler alleges that he was confined at Wilcox State Prison from September 2010 to December 2011, a time period less than two years before he filed this action. (Doc. 7-1 at 12; Doc. 35 at 2.)

Schwindler's religious freedom claims for the events at Wilcox State Prison are based on an alleged GDC policy that Schwindler contends caused the statutory and constitutional violations. (Doc. 7.) Owens is liable for damages in his individual capacity on those claims only if Schwindler shows that Owens personally established or implemented the policy. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Ancata*, 769 F.2d at 705-06. Schwindler's allegations do not support a plausible finding that Owens, himself, established or implemented the policy. (Doc. 7.) Thus, the claims cannot proceed against Owens in his individual capacity.

Schwindler's religious freedom claims for the events at Wilcox State Prison can proceed against Owens in his official capacity for prospective injunctive relief, however, because an official-capacity claim (effectively a claim against the State in

9

this case) does not require that Owens have personally established or implemented the alleged policy. *See Ex parte Young*, 209 U.S. 123, 158-60 (1908); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995). If this were not the law, a state or other government entity could create an unconstitutional policy, immediately replace the official(s) personally involved in creating the policy, and forever avoid an injunction against enforcement of the policy. Schwindler alleges that the religious freedom violations caused by the GDC policy continue to this day, and he seeks prospective injunctive relief. (Doc. 7); *see Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) ("[T]he Eleventh Amendment does not insulate state officials acting in their official capacities from suit in federal court, at least to the extent the complainant seeks prospective injunctive relief.").

Schwindler's transfer from Wilcox State Prison to another prison does not moot his claim for prospective injunctive relief, contrary to the finding in the R&R regarding mootness, because Schwindler alleges that the policy that is the basis of the

10

claim is a state-wide policy applicable to all Georgia prisons.[2] If Schwindler prevails on his religious freedom claims based on the allegedly unconstitutional GDC policy, he can obtain meaningful prospective injunctive relief as long as he remains confined in a Georgia prison.

## III. Conclusion

For the foregoing reasons, the Court **OVERRULES** Owens' objections [33], **OVERRULES IN PART** Schwindler's [39] objections, and **ADOPTS IN PART** the R&R [31]. Owens' motion to dismiss [19] is **GRANTED** as to all of Schwindler's claims except Schwindler's (1) access-to-courts claims regarding events that occurred on or after April 12, 2009; (2) retaliation claims regarding events that occurred on or after April 12, 2009; (3) RLUIPA claim for prospective injunctive relief against Owens in his official capacity regarding events that occurred during Schwindler's confinement at Wilcox State Prison; and (4) First Amendment religious freedom claim for prospective injunctive relief against Owens in his official capacity regarding events

---

[2] Accordingly, Schwindler's RLUIPA claims based on events that occurred at various prisons on or after April 12, 2007 (the earliest date for timely claims given RLUIPA's four-year statute of limitations) are not moot because all of those claims are based on the allegedly unconstitutional GDC policy. The evidence demonstrates, however, that Schwindler exhausted his administrative remedies for only the claims based on events at Wilcox State Prison.

11

that occurred during Schwindler's confinement at Wilcox State Prison. Only those claims will proceed in this action.

Schwindler's tort claims under Georgia law, his § 1983 claims regarding events that occurred prior to April 12, 2009, and his RLUIPA claims regarding events that occurred prior to April 12, 2007 are **DISMISSED WITH PREJUDICE**. Schwindler's remaining claims that the Court has not allowed to proceed are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Schwindler's motion for entry of default [14] is **DENIED**. Schwindler's motion for a discovery period [13] is **GRANTED**. A four-month discovery period will begin on the date this Order is entered.

**SO ORDERED** this 6th day of March, 2012.

TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)