IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FRANK JOSEPH SCHWINDLER, | :: | PRISONER CIVIL RIGHTS |
| Plaintiff, | :: | 42 U.S.C. § 1983 |
| | :: | |
| v. | :: | |
| | :: | |
| BRIAN OWENS, Commissioner, | :: | CIVIL ACTION NO. |
| Georgia Department of Corrections, | :: | 1:11-CV-1276-TCB-LTW |
| Defendant. | :: | |

## ORDER

Plaintiff Frank Joseph Schwindler is a state prisoner. In this action, Schwindler seeks to hold Defendant Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDC"), liable in his official capacity for the alleged violation of Schwindler's right to access the courts and for alleged retaliation. Owens filed a motion for summary judgment. (Doc. 98.) Magistrate Judge Walker issued a Report and Recommendation that the motion be granted. (Doc. 113 ("R&R").) Schwindler filed objections to the R&R, (Doc. 115), and Owens filed a reply to the objections, (Doc. 118).

Each party then filed a motion for leave to file an additional brief and additional evidence. (Docs. 119, 120.) On July 12, 2013, Schwindler filed his additional brief and a new affidavit from him dated June 5, 2013. (Docs. 119-1, 119-2.) Schwindler's

filing complains of his transfer from Macon State Prison, where he had been confined since October 2012, to Phillips State Prison on May 30, 2013, which he contends is further evidence in support of his claims. In response, Owens filed his additional brief and affidavits from two prison officials regarding Schwindler's latest transfer. (Docs. 121 through 121-4.) The Court has considered both parties' additional filings.

**I.  Standard of Review**

A district judge must conduct a careful and complete review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982). The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made," 28 U.S.C. § 636(b)(1)(C), while those portions of the R&R for which there is no objection are reviewed only for clear error, *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination,

however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial (as Schwindler would on his claims), there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox,*

3

*Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

## II. Analysis

The Court has reviewed the evidentiary record de novo and in the light most favorable to Schwindler. Upon such review, the Court agrees with the conclusions in the R&R that there is no genuine issue of fact as to whether Owens is continuing to violate Schwindler's right to access the courts or whether there is ongoing retaliation of a pervasive and widespread nature of which Owens is aware.

The law is clear, and the parties do not dispute, that Schwindler's official-capacity claims bar recovery for past wrongs and require him to show an ongoing violation of his rights to obtain the prospective injunctive relief to which he is limited. (*See* R&R at 2-4.) Because it is undisputed that there is no evidence of a formal policy or that Owens personally took action that violated Schwindler's rights, it also is clear that Schwindler must show a flagrant, pervasive, widespread practice of constitutional violations of which Owens was aware. (*See id.* at 8-9.) Owens has presented evidence showing that Schwindler cannot make those showings if this case went to trial. The Court finds no genuine issue of fact as to those essential elements of Schwindler's access-to-courts and retaliation claims.

4

Earlier in this case, the Court limited Schwindler's claims to events occurring on or after April 12, 2009. (Doc. 47.) The access-to-courts claim is based on the alleged denial of Schwindler's access to his legal files at various prisons since that time. Schwindler argues in his objections to the R&R that there is evidence, namely his deposition testimony and an ante litem notice he sent to Owens in 2010, that he is continuing to be denied access to the legal files that he discovered were missing in April 2009. While Schwindler testified that he has continued to complain about the missing files (including via this lawsuit) and has continued to seek them since 2009, his argument that the denied access to the missing files is ongoing assumes that such access could be granted, i.e., that the files still exist. There is no evidence in the record that the files still exist. (*See* Doc. 98-5 at 28-33 (GDC official's testimony that GDC has no basis to know if allegedly missing files ever existed, much less that they still exist).) Thus, there is no basis to find that there is a genuine issue as to whether Owens is continuing to deny Schwindler access to the legal files Schwindler identified as missing over four years ago and for which there is no evidence that anyone has seen since that time.

As for the legal files Schwindler inventoried in April 2009 that do still exist, Schwindler points to his testimony that he was denied access to those files at various

AO 72A
(Rev.8/82)

times after 2009 to support his objections. There must be evidence of ongoing denial of access, however, for there to be a genuine issue of fact given that the claim is one against Owens in only his official capacity. There is no such evidence. Schwindler repeatedly testified that he has not sought access to the files at the various prisons at which he has been confined since 2009 other than to inventory them in 2012. (Doc. 98-10 at 62-66; Doc. 98-11 at 7.) Schwindler was given access to the files in 2012. (*Id.*) Although Schwindler may contend that this lawsuit played a role in his obtaining the access he sought in 2012, the fact remains that there is no evidence of an ongoing denial of access to the files, i.e., a present denial. There is no genuine issue as to whether there is an ongoing violation.[1]

---

[1] Schwindler averred in his June 5, 2013 affidavit that his existing legal files were not transferred with him to Phillips State Prison on May 30, 2013 and that he does not have access to them. (Doc. 119-2 at 1-2.) Owens responded with an affidavit dated July 18, 2013 from the Deputy Warden of Care and Treatment at Phillips, who averred that all of Schwindler's personal property arrived at Phillips on June 5, 2013; Schwindler signed an inventory form regarding his property; and Schwindler has not complained of any missing items. (Doc. 121-4.) Those affidavits create no genuine dispute of fact because Schwindler's affidavit does not dispute that his legal files arrived some time on June 5 (and the June 5 property inventory form that Schwindler signed does not indicate any missing items). Schwindler presented his affidavit to the Court on July 12, yet it contains no evidence of events happening on or after June 5. Two months have passed since the date of Schwindler's affidavit and the date on which the deputy warden at Phillips averred that Schwindler's property arrived at Phillips. Schwindler has submitted no evidence in that time period suggesting that he does not have access to his legal files that have been preserved since 2009.

AO 72A
(Rev.8/82)

Finally, the Court finds no genuine issue as to whether Owens was aware of a widespread, pervasive practice of retaliatory transfers of prisoners among prisons, which Schwindler must show to succeed on his official-capacity retaliation claim. The undisputed evidence is that Owens has been the GDC Commissioner since 2009, Schwindler has been transferred among prisons seven times since that time, and those seven transfers are less than the average number of transfers for all inmates. It also is undisputed that Schwindler has been transferred among prisons four times since he filed this suit in early 2011, which is less than the average.

Schwindler testified that "[e]very last [transfer] . . . followed a grievance, or a complaint, or a court order," (Doc. 98-11 at 55), but the evidence does not support a reasonable inference of a link between the protected activity and all the transfers during Owens's tenure. Schwindler averred that the most recent transfer, for example, occurred "[i]mmediately upon receipt of [his] Objections [to the R&R] by Defendant," (Doc. 119-2 at 1), which he filed and served on Defendant's counsel on May 28, 2013, (Doc. 115). Even assuming that Owens (and not just his counsel) became aware of Schwindler's objections to the R&R on the earliest possible date – May 28 – it is undisputed that Schwindler's transfer was initiated at Macon State Prison on May 16 because that prison is shifting its population to high security inmates and Schwindler

7

is a medium security inmate. (Doc. 121-1.)

Even if a reasonable juror could find a causal link for some of Schwindler's transfers since Owens became the GDC commissioner, the evidence does not support a finding that the retaliatory transfers were "obvious, flagrant, rampant and of continued duration" such that Owens was or should have been aware of the retaliation. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Nor does the evidence support a finding of a longstanding and widespread practice of retaliatory transfers, as required to hold Owens liable for an unofficial custom or practice. *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). As noted in the R&R, there is no evidence of retaliatory transfers of other Georgia prisoners or evidence that Owens knew before this case was filed in 2011 that Schwindler had been transferred among prisons.

In short, Schwindler's official-capacity retaliation claim requires more than simply a disputed issue of fact as to whether a particular transfer or a few particular transfers were retaliatory. *See Hawk v. Klaetsch*, No. 12-0058-WS-B, 2012 WL 6569286, at *5 (S.D. Ala. Dec. 14, 2012) (holding that evidence of three alleged instances of excessive force, of which police chief was aware, were "too few . . . to establish a 'widespread practice'"); *Slone v. Judd*, No. 8:09-CV-1175-T-27TGW,

2011 WL 1124618, at *24 (M.D. Fla. Mar. 25, 2011) (holding that evidence of five alleged instances of excessive force over eight years "does not even raise a disputed issue of fact as to whether a pervasive, widespread custom or practice of using excessive force existed"). After reviewing all the evidence in the light most favorable to Schwindler, the Court does not find a genuine issue as to whether there was a pervasive, widespread custom or practice of retaliatory transfers. Owens is entitled to judgment as a matter of law.

### III. Conclusion

For the foregoing reasons, the Court **OVERRULES** Schwindler's objections [115] and **ADOPTS** the R&R [113] as the opinion of the Court. Owens's motion for summary judgment [98] is **GRANTED** and this case is **DISMISSED**. The parties' motions to file additional briefs and evidence [119 & 120] are **GRANTED nunc pro tunc**.

**SO ORDERED** this 5th day of August, 2013.

TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)